The Honorable Armil O. Curran State Representative 210 West Main Street Clarksville, AR 72830-3019
Dear Representative Curran:
This is in response to your request for an opinion on whether a school district can use school bond construction money to lay a sewer line that will connect a new school building with a city sewer system. You state that the plan for the school building originally called for installation of a septic system. Since then, however, the City of Coal Hill has put in a sewer system and has proposed that the city and the school district share equally the costs of laying the sewer line, which would cross over property not owned by the district.
This question is not easily answered with a simple "yes" or "no" because it requires a review of all the surrounding facts and circumstances. Although I cannot act as a factfinder, and thus cannot offer a definitive answer, I will analyze the underlying legal issues in this instance.
While it is unlikely, as an initial matter, that this proposed use of bond proceeds would be objectionable from the bondholders' standpoint, the district may wish to seek the advice of bond counsel in this regard.
From the perspective of school district electors, the question must be addressed with reference to Sections 2 and 3 of Article 4 of the Arkansas Constitution, which provide as follows:
 No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
Ark. Const. art. 14, § 2.
 [N]o [local school tax] shall be appropriated for any other purposes nor to any other district than that for what it is levied.
Ark. Const. art. 14, § 3.
Thus, the proposed use of the bond proceeds must represent a purpose to which public school funds may be applied under our constitution. In this regard, A.C.A. § 6-20-1201 (Adv. Code Serv. 1994-95) provides generally that:
 All school districts are authorized to borrow money and issue negotiable bonds for the repayment thereof from school funds for the building and equipment of school buildings, making additions and repairs thereto, purchasing sites therefor, purchasing new or used school buses, refurbishing school buses, and paying off outstanding postdated warrants, installment contracts, revolving loans, and lease purchase agreements, as provided in this act.
Costs incurred in connection with laying a sewer line to the new building would, it seems, fall within the general purposes for which school bonds may be issued. The district's power of eminent domain would also reasonably extend to such a use of property. See A.C.A. § 6-13-103
(Repl. 1993) (including within "school purposes," for which the power of eminent domain may be exercised, such "other necessary uses incidental to the maintenance of schools.")
The fact that property other than school district property may be benefited by the improvement will not, in my opinion, be objectionable in itself. The courts have in several instances recognized as constitutional a use of school funds that benefits those funds or property or aids in the stated purposes for which the funds may be expended, where the resultant benefits are shared with non-school property. See, e.g.,Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968) (holding a school district liable for paying special assessments in connection with school property benefited by the improvement); County Board of Educationv. Austin, 169 Ark. 436, 276 S.W.2d 2 (1925) (upholding the use of school funds to pay a portion of the salaries of the county collector and county treasurer). Rainwater, supra, offers particular insight wherein the court addressed a school district's obligation to pay municipal street improvement assessments. In concluding that this use of school funds did not violate Ark. Const. art. 14, §§ 2 and 3, the court stated:
 The benefit to be derived by school districts in performing their functions by construction of streets, sewers, water systems, electrical distribution systems, drains, levees, and other improvements which may be undertaken through improvement districts seem obvious. Certainly, direct expenditures by school districts for such improvements for its own use and benefit would not be considered diversion of school funds. There is no reason why the distribution of the financial burden proportionately among a number of properties so benefited should make it so.
244 Ark. at 1196.
Thus, assuming that the financial burden of laying the line is proportionately distributed, I foresee no constitutional impediment to the district sharing the costs with the city. Of course, whether the costs incurred by the district are proportionate to the benefit(s) conferred will require a factual determination that is not within the scope of an opinion from this office. I suggest that the district consult its local counsel in this regard. As a general matter, broad discretion is vested in the board of directors of each school district in directing the operation of the schools, and a court will not interfere with that discretion in the absence of a showing of clear abuse. Safferstone v.Tucker, 235 Ark. 70, 357 S.W.2d 3 (1962).
As a final note, reference should be made to the annual budget and the approved tax levy in order to insure that the proposed use of the bond money will not run afoul of Ark. Const. art. 14, § 3, supra. It is unlikely that the change from installing a septic system to laying the sewer line would be considered significant enough to affect the electors' vote at the annual school election. See generally Bates v. Orr,236 Ark. 499, 367 S.W.2d 122 (1963) (upholding the school board's approval of an alternative site for school facilities). However, a thorough review requires that any issues in this regard be considered. Again, the district may wish to seek the guidance of local counsel in this regard.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh